STATES DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING DIVISION

ELECTRONICALLY
FILED
2/18/2025
U.S. DISTRICT COURT
Northern District of WV

BRIAN PATOSKY, on behalf of himself and all others similarly situated,

        Plaintiff,

   v.

HANCOCK COUNTY SAVINGS BANK, FSB, Inc.,

        Defendant.

Case No.   5:25-cv-33 Bailey

**CLASS ACTION COMPLAINT**

**JURY DEMAND**

## CLASS ACTION COMPLAINT

Plaintiff Brian Patosky, on behalf of himself and all persons similarly situated, alleges the following based on personal knowledge as to allegations regarding himself and on information and belief as to others:

### NATURE OF THE ACTION

1. Plaintiff brings this action on behalf of himself and a class of similarly situated individuals against Defendant Hancock County Savings Bank, FSB, Inc. ("Defendant") over the improper assessment and collection of multiple $35.00 Non-sufficient Funds ("NSF") fees on an item that the consumer only presented for payment once.

2. Besides being deceptive, this practice breaches Defendant's standardized adhesion contract which includes the "Understanding Your Deposit Account" document attached hereto as **Exhibit A**, the Terms and Conditions Overdraft Addendum attached hereto as **Exhibit B**, and the Fee Schedule attached hereto as **Exhibit C (**collectively, the "Contract").

3. This practice also breaches Defendant's duty of good faith and fair dealing and unjustly enriches Defendant to the detriment of its customers.

4.      Through the imposition of these fees, Defendant has made substantial revenue to the tune of millions of dollars, seeking to turn its customers' financial struggles into revenue. Plaintiff, like thousands of others, has fallen victim to Defendant's fee revenue maximization scheme.

**PARTIES**

5.      Plaintiff is a citizen of Pennsylvania and has had a checking account with Defendant at all relevant times hereto.

6.      Defendant is a West Virginia bank with nearly $475 million in assets. Defendant maintains its headquarters and principal place of business in Chester, West Virginia, in this District. Defendant provides retail banking services to its customers in this District, including Plaintiff and members of the putative Class.

**JURISDICTION AND VENUE**

7.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2), because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which at least one member of the class (including Plaintiff) is a citizen of a State different from the Defendant. The number of members of the proposed Class in aggregate exceeds 100 accountholders. 28 U.S.C. § 1332(d)(5)(B).

8.      This Court also has original jurisdiction under 28 U.S.C. §§ 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

9.      This Court has personal jurisdiction over the Defendant because it resides in, regularly conducts and/or solicits business in, engages in other persistent courses of conduct in,

and/or derives substantial revenue from products and/or services provided to persons in this District and West Virginia.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (c)(2) because Defendant resides in, regularly conducts and/or solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from products and/or services provided to persons in this District and West Virginia.

## BACKGROUND FACTS

11.     In 2021, the largest financial institutions in America charged customers almost $11 billion in overdraft fees. Customers who carried an average balance of less than $29.50 paid 84 percent of these fees. *Why Poverty Persists in America* (The New York Times, Mar. 9, 2023), https://www.nytimes.com/2023/03/09/magazine/poverty-by-america-matthew-desmond.html.

12.     Because of this, industry leaders like Bank of America, Capital One, Wells Fargo, Alliant, and Ally have made plans to end the assessment of OD or Insufficient Funds Fees ("NSF Fees") entirely. *See* Hugh Son, *Capital One to Drop Overdraft Fees for All Retail Banking Customers*, NBC News (Dec. 1, 2021), https://nbcnews.to/3DKSu2R; Paul R. La Monica, *Wells Fargo Ends Bounced Check Fees*, CNN (Jan. 12, 2022), https://bit.ly/3iTAN9k.

13.     Federal regulators have also taken action. For example, the Consumer Financial Protection Bureau (CFPB) recently fined Regions Bank $191 million, finding that it "acted unfairly and abusively" in violation of the Consumer Financial Protection Act of 2010 by assessing the same "surprise" fees at issue here. CFPB, Enforcement Actions, Regions Bank (Sep. 28, 2022), available at: https://www.consumerfinance.gov/enforcement/actions/regions-bank_2022 (last accessed Mar. 22, 2023).

14.     Through the imposition of these fees, Defendant has made substantial revenue to

the tune of tens of millions of dollars, seeking to turn its customers' financial struggles into revenue.

I. **PLAINTIFF NEVER AGREED TO BE ASSESSED MULTIPLE FEES ON AN ITEM THAT THE CONSUMER ONLY PRESENTED FOR PAYMENT ONCE**

15. Defendant unlawfully maximizes its already profitable fees through its deceptive and contractually-prohibited practice of charging multiple NSF fees, or an NSF fee followed by an overdraft fee ("OD Fee"), on an item that the consumer only presented for payment once.

16. In 2023, the CFPB has stated that:

> The assessment of multiple NSF fees for the same transaction caused substantial monetary harm to consumers, totaling millions of dollars. These injuries were not reasonably avoidable by consumers, regardless of account opening disclosures. And the injuries were not outweighed by countervailing benefits to consumers or competition.

Consumer Fin. Protection Bureau, Issue 29, Winter 2023, Supervisory Highlights Junk Fees Special Edition, *available at* https://www.consumerfinance.gov/data-research/research-reports/supervisory-highlights-junk-fees-special-edition-issue-29-winter-2023/.

17. The FDIC also recently recommended that the multiple fee practice be halted entirely. *See* Barbarino, Al. "FDIC Warns Banks About Risks of Bounced Check Fees." Law360, Aug. 19, 2022, *available at* https://www.law360.com/articles/1522501/fdic-warns-banks-about-risks-tied-to-bounced-check-fees.

18. And, in a 2022 issue of Consumer Compliance Supervisory Highlights, the FDIC again addressed the charging of multiple non-sufficient funds fees for transactions presented multiple times against insufficient funds in the customer's account. *See* FDIC Consumer Compliance Supervisory Highlights, Mar. 2022, available at https://www.fdic.gov/news/financial-institution-letters/2022/fil22014.html. FDIC examiners have scrutinized this issue in recent exams, with some exams remaining open pending resolution of the issue.

19.     Defendant, however, engages in this abusive and deceptive practice in violation of its own contract and against the reasonable expectations of its customers.

20.     The Contract allows Defendant to take certain steps when paying a check, in person withdrawal, ATM withdrawal or other electronic item initiated by the consumer when the account does not have sufficient funds to cover it. Specifically, Defendant may (a) pay the item and charge a $35.00 fee; or (b) reject the item and charge a $35.00 fee.

21.     In contrast to the Contract, however, Defendant regularly assesses two or more $35.00 fees on an item that the consumer only presented for payment once.

**A.  The Imposition of Multiple Fees on an Item That the Consumer Only Presented for Payment Once Violates Defendant's Express Promises and Representations**

22.     The Contract is a standardized form contract for share accounts, the material terms of which are drafted by Defendant, amended by Defendant from time to time at its convenience and complete discretion, and imposed by Defendant on all of its deposit accounts.

23.     The Contract provides the general terms of Plaintiff's relationship with Defendant, and therein Defendant makes explicit promises and representations regarding how an item will be processed, and how fees may be assessed.

24.     The Contract promises:

> An overdrawn account will typically result in you being charged an overdraft fee or an NSF fee. Generally, an overdraft occurs when there is not enough money in your account to pay for a transaction, but we pay (or cover) the transaction anyway. An NSF transaction is slightly different. In an NSF transaction, we do not cover the transaction. Instead, the transaction is rejected and the item or requested payment is returned. In either situation, we can charge you a fee.

Ex. A at 3. *See also* Ex. B at 1.

25.     The Contract further promises to assess a fee when the consumer presents an item for payment multiple times:

> **Nonsufficient funds (NSF) fees** - If an item drafted by you (such as a check) or a transaction you set up (such as a preauthorized transfer) is presented for payment in an amount that is more than the amount of money available in your account, and we decide not to pay the item or transaction, you agree that we can charge you an NSF fee for returning the payment. Be aware that such an item or payment may be presented multiple times and that we do not monitor or control the number of times a transaction is presented for payment. You agree that we may charge you an NSF fee each time a payment is presented if the amount of money available in your account is not sufficient to cover the payment, regardless of the number of times the payment is presented.

Ex. A at 3 (emphasis in original). *See also* Ex. B at 1.

26.    The Fee Schedule promises to charge an "NSF Charge" (singular) of $35.00 for a "Non-sufficient funds item" (singular):

| | |
|---|---|
| NSF Charge | $35.00 |
| A Non-sufficient funds item may be created by check, in person withdrawal, ATM withdrawal or other electronic means | |
| ACH NSF Charge | $35.00 |

Ex. C at 1.

27.    In breach of these promises, Defendant assesses multiple fees of up to $105.00 per item when Plaintiff only presented the item for payment once (i.e., Plaintiff never resubmitted the item for payment).

28.    The same "item" on an account cannot conceivably become a new one each time it is rejected for payment then reprocessed, especially when—as here—Plaintiff took no action to resubmit it.

29.    Defendant and its customers never agreed that Defendant could assess multiple fees for a single check, draft, transaction, or other debit when the customer has only presented the item for payment once.

30.    The Contract provides no such authorization, an actually promises the opposite – Defendant may charge at most, a fee of "$35.00" on a "Non-sufficient funds item" that the consumer has only presented for payment once.

31.     As such, Defendant breached its Contract when it charged more than one fee per item that the consumer only presented for payment once.

### B. Plaintiff's Experience

32.     In support of Plaintiff's claim, Plaintiff offers examples of fees that should not have been assessed against Plaintiff's checking account. As alleged below, Defendant: (a) reprocessed a previously declined item without instruction from Plaintiff; and (b) charged a fee upon reprocessing.

33.     On or around July 3, 2023, Plaintiff attempted a single payment to SHOP YOUR WAY MC AUTO PYMT in the amount of $50.00.

34.     The defendant rejected payment of that item on or around July 5, 2023 due to insufficient funds in Plaintiff's account and charged a $35.00 ACH NSF Fee for doing so.

35.     Unbeknownst to Plaintiff and without Plaintiff's request to Defendant to reprocess the item, on or around July 7, 2023, Defendant processed the same item yet again, and on or around July 10, 2023, rejected the item again and assessed Plaintiff a second $35.00 ACH NSF Fee for doing so.

36.     Unbeknownst to Plaintiff and without Plaintiff's request to Defendant to reprocess the item, on or around July 12, 2023, Defendant processed the same *a third time*, and on or around July 13, 2023 Defendant rejected the item again and assessed Plaintiff a *third* $35.00 ACH NSF Fee for doing so.

37.     *In sum, Defendant charged Plaintiff $105 in fees on an item that the consumer only presented for payment once.*

38.     On or around March 4, 2024, Plaintiff attempted a single payment by check number 378.

39.     Defendant rejected payment of that item on or around March 5, 2024 due to insufficient funds in Plaintiff's account and charged a $35.00 ACH NSF Fee for doing so.

40.     Unbeknownst to Plaintiff and without Plaintiff's request to Defendant to reprocess the item, on or around March 11, 2024, Defendant processed the same item yet again, rejected the item again on or around March 12, 2024 and assessed Plaintiff a second $35.00 ACH NSF Fee for doing so.

41.     Unbeknownst to Plaintiff and without Plaintiff's request to Defendant to reprocess the item, on or around March 18, 2024, Defendant processed the same *a third time*, and on or around March 19, 2024, Defendant rejected the item again and assessed Plaintiff a *third* $35.00 ACH NSF Fee for doing so.

42.     *In sum, Defendant charged Plaintiff $105 in fees on an item that the consumer only presented for payment once.*

43.     Defendant also charged Plaintiff multiple fees on an item that the consumer only presented for payment for payment once on January 19, 2023 and January 24, 2023; February 3, 2023 and February 7, 2023; May 19, 2023 and May 24, 2023; June 21, 2023 and June 26, 2023; July 19, 2023 and July 24, 2034; August 3, 2023, August 8, 2023 and August 11, 2023; March 13, 2024 and March 18, 2024; and September 18, 2024 and September 24, 2024.

44.     Plaintiff understood these payments to be a single transaction as is laid out in the Contract, capable of receiving, at most, a single fee if Defendant returned it, or a single fee if Defendant paid it.

45.     Defendant also understood the payments to be single transactions too as evidenced by the fact that, Defendant's own bank statements show additional submissions of the same transaction by the merchant as a "RETRY PYMT" of the original item and not a new transaction subject to a new fee.

### C.  None of These Fees Were Errors

46.     The improper fees charged by Defendant to Plaintiff's account were also not errors by Defendant, but rather were intentional charges made by Defendant as part of its standard processing of items.

47.     Plaintiff therefore had no duty to report the fees as errors because they were not; instead, they were part of the systematic and intentional assessment of fees according to Defendant's standard practices.

48.     Moreover, any such reporting would have been futile as Defendant's own contract admits that Defendant made a decision to charge the fees.

## CLASS ALLEGATIONS

49.     Plaintiff brings this action individually and as a class action on behalf of himself and all others similarly situated pursuant to Fed. R. Civ. P. 23:

> All Defendant checking accountholders who, during the applicable statute of limitations, were assessed multiple fees on an item that the consumer only presented for payment once.

50.     Plaintiff reserves the right to modify or amend the definition of the Class before the Court determines whether certification is appropriate.

51.     Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers, directors, legal representatives, successors, and assigns; any entity in which Defendant has a controlling interest; all customers members who make a timely election to be excluded; governmental entities; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members

52.     The members of the Class are so numerous that joinder is impractical. The Class consists of thousands of members, the identities of whom are within the exclusive knowledge of Defendant and can be ascertained only by resort to Defendant's records.

53.    Plaintiff's claims are typical of the claims of the Class in that Plaintiff, like all members of the Class, was charged improper fees. Plaintiff, like all members of the Class, has been damaged by Defendant's misconduct in that he has been assessed unlawful fees. Furthermore, the factual basis of Defendant's misconduct is common to all members of the Class and represents a common thread of deceptive and unlawful conduct resulting in injury to all members of the Class. Plaintiff has suffered the harm alleged and has no interests antagonistic to the interests of any other members of the Class.

54.    The questions in this action are ones of common or general interest such that there is a well-defined community of interest among the members of the Class. These questions predominate over questions that may affect only individual class members because Defendant has acted on grounds generally applicable to the Class.

55.    Among the questions of law and fact common to the Class include:

a.    Whether Defendant violated its Contract by charging multiple fees on an item that the consumer only presented for payment once;

b.    Whether Defendant breached its covenant of good faith and fair dealing with Plaintiff and other members of the Class through its fee policies and practices;

c.    Whether Defendant was unjustly enriched by its fee assessment practices;

d.    The proper method or methods by which to measure damages; and

e.    The declaratory and injunctive relief to which the Class is entitled.

56.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the members of the Class will continue to suffer losses and Defendant's misconduct will proceed without remedy.

57.     Even if Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows for the consideration of claims which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

58.     Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions, particularly on behalf of consumers and against financial institutions. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

59.     Plaintiff suffers a substantial risk of repeated injury in the future. Plaintiff, like all members of the Class, is at risk of additional improper fees. Plaintiff and the Class are entitled to injunctive and declaratory relief as a result of the conduct complained of herein. Money damages alone could not afford adequate and complete relief, and injunctive relief is necessary to restrain Defendant from continuing to commit its illegal actions.

**COUNT ONE: BREACH OF CONTRACT, INCLUDING BREACH OF THE
COVENANT OF GOOD FAITH AND FAIR DEALING
(On Behalf of Plaintiff and the Class)**

60.     Plaintiff realleges and incorporates by reference all the foregoing allegations as if they were fully set forth herein.

61.     Plaintiff and Defendant have contracted for bank account deposit, checking, and debit card services. *See* Exs. A – C.

62.    All contracts entered by Plaintiffs and the Class are identical or substantively identical because Defendant's form contracts were used uniformly.

63.    Defendant misconstrued in the Contract its true OD Fee practices and breached the express terms of the Contract by charging multiple fees on an item that the consumer only presented for payment once.

64.    Under West Virginia law, good faith is an element of every contract between banks and/or credit unions and their customers because banks and credit unions are inherently in a superior position to their checking account holders and, from this superior vantage point, they offer customers contracts of adhesion, often with terms not readily discernible to a layperson.

65.    Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

66.    Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain and abuse of a power to specify terms.

67.    Defendant has breached the covenant of good faith and fair dealing in the contract through its policies and practices as alleged herein.

68.    Plaintiff and members of the Class have performed all, or substantially all, of the obligations imposed on them under the Contract.

69.     Plaintiff and members of the Class have sustained damages as a result of Defendant's breach of the Contract.

70.     Plaintiff and members of the Class have sustained damages because of Defendant's breach of the covenant of good faith and fair dealing.

## COUNT TWO: UNJUST ENRICHMENT
### (On Behalf of Plaintiff and the Class)

71.     Plaintiff realleges and incorporates by reference all the foregoing allegations as if they were fully set forth herein.

72.     Plaintiff, individually and on behalf of the Class, asserts a common law claim for unjust enrichment. This claim is brought solely in the alternative to Plaintiff's breach of contract claim and applies only if the parties' contracts are deemed unconscionable or otherwise unenforceable for any reason. In such circumstances, unjust enrichment will dictate that Defendant disgorge all improperly assessed fees.

73.     Plaintiff and members of the Class conferred a benefit on Defendant at the expense of Plaintiff and members of the Class when they paid improper fees.

74.     Defendant appreciated this benefit in the form of the substantial revenue that Defendant generates from the imposition of such fees.

75.     Defendant has accepted and retained such fees under inequitable and unjust circumstances.

76.     Defendant should not be allowed to profit or enrich itself inequitably and unjustly at the expense of Plaintiff and the members of the Class and should be required to make restitution to Plaintiff and members of the Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of members of the Class respectfully

request the Court to enter an Order:

a.      certifying the proposed Class, appointing Plaintiff as Class Representative, and appointing
        Plaintiff's counsel as Class counsel;

b.      declaring Defendant's fee policies and practices alleged in this Complaint to be wrongful
        and unconscionable in light of its contractual promises;

c.      enjoining Defendant from breaching its Contract;

d.      awarding Plaintiff and the Class restitution in an amount to be proven at trial;

e.      awarding actual damages in an amount according to proof;

f.      awarding pre-judgment and post-judgment interest at the maximum rate permitted by
        applicable law;

g.      awarding costs and disbursements assessed by Plaintiffs in connection with this action,
        including reasonable attorneys' fees and costs pursuant to applicable law; and

h.      awarding such other relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff, by counsel, hereby demands trial by jury.

Dated: February 18, 2025                          Respectfully submitted,

                                        _/s/ Rodney A. Smith_____
                                        Rodney A. Smith (WVSB # 9750)
                                        M. Alex Urban (WVSB # 13480)
                                        **ROD SMITH LAW PLLC**
                                        108 ½ Capitol St., Suite 300
                                        Charleston, WV 25301
                                        Telephone: (304) 342-0550
                                        Facsimile: (304) 344-5529
                                        rod@lawwv.com
                                        aurban@lawwv.com

14

Lynn A. Toops*
**COHEN & MALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Telephone: 317-636-6481
ltoops@cohenandmalad.com

J. Gerard Stranch, IV*
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Ste. 200
Nashville, TN 37203
Telephone: (615) 254-8801
gstranch@stranchlaw.com

David M. Berger*
**GIBBS LAW GROUP LLP**
1111 Broadway, Suite 2100
Oakland, California 94607
Telephone: (510) 350-9700
Fax: (510) 350-9701
dmb@classlawgroup.com

* *Pro Hac Vice* applications to be submitted

*Attorneys for Plaintiff and the Putative Class*